UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY SIMONSON,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN FORMISANO and THE CITY OF NEWARK,<br><br>    Defendants. | Case No.: 2:20-cv-20480-WJM-MF<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

    This action arises out of a tragic incident in which Defendant John Formisano ("Formisano"), a former lieutenant in the Newark Police Division (the "NPD"), allegedly shot Plaintiff Timothy Simonson ("Plaintiff") and his girlfriend Christie Solaro, killing Ms. Solaro and seriously wounding Plaintiff. Plaintiff brings this action against both Formisano and his former employer, the City of Newark (the "City"), asserting claims for, among other things, excessive use of force in violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983 and negligent supervision under New Jersey state law. The matter comes before the Court on the City's motion (the "Motion") to dismiss Counts III and IV of the Complaint for failure to state a claim upon which relief can be granted. ECF No. 11. For the reasons set forth below, the City's Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.    BACKGROUND[1]**

    On the evening of July 14, 2019, Plaintiff was at the home of his girlfriend Christie Solaro with her children in Morris County, New Jersey which was owned by Formisano. Compl. at ¶ 12; Mot. Ex. 4. At approximately 11:30 p.m., Plaintiff and Ms. Solaro saw a flashlight shining around their yard, and Ms. Solaro went outside to investigate. *Id.* at ¶¶ 14-15. Once outside, Ms. Solaro encountered Formisano, who was then a lieutenant in the NPD, wearing his police uniform and carrying his service weapon. *Id.* at ¶¶ 16-18. Formisano fired several shots from his service weapon, striking Ms. Solaro. *Id.* at ¶ 18. After shooting Ms. Solaro, Formisano proceeded to kick open the front door to the home and shoot Plaintiff seven times with police issued hollow-tip bullets from his service weapon. *Id.* at ¶ 19. Formisano then returned outside, fatally shot Ms. Solaro, and fled the scene. *Id.* at ¶¶ 20-21. After calling 911, Plaintiff was transported to Morristown Medical Center and underwent emergency surgery to treat his extensive injuries. Formisano was

---

[1] For purposes of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

arrested by police the following morning in Livingston, New Jersey and charged with, among other things, the murder of Ms. Solaro. *Id.* at ¶¶ 28-29. He has pleaded not guilty by reason of insanity, and his criminal case is pending before the Criminal Division of the New Jersey Superior Court for Morris County. *Id.* at ¶ 31; Mot. Ex. 8.

## II. LEGAL STANDARD

FRCP 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

The City moves to dismiss both of Plaintiff's claims against it for failure to state a claim upon which relief may be granted. The Court addresses each claim in turn. Before doing so, however, the Court is compelled to address the documents it may consider in ruling on Defendant's motion.

Generally speaking, in ruling on a motion to dismiss, the Court may consider only the allegations contained in the complaint and any exhibits attached thereto. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."). There are, however, two exceptions to this rule which allow the Court to consider "certain narrowly defined types of material" outside the pleadings without converting a motion to dismiss into one for summary judgment. *See In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). First, the Court may consider documents attached to a motion to dismiss if such documents are "integral to or explicitly relied upon in the complaint" or are "undisputedly authentic document[s]" upon which a plaintiff's claims are based. *In re Asbestos Prod. Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). Second, the Court may take judicial notice of certain facts and documents that are not subject to reasonable dispute because they are either: (1) "generally known within [the Court's] territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Johnson v.*

*Shop-Vac Corp.*, No. 3:19-cv-14834-BRM-DEA, 2020 WL 3496957, at *4 (D.N.J. June 29, 2020). Accordingly, the Court may take judicial notice of authentic publicly available records, including, for example, judicial proceedings, criminal case dispositions, and other publicly available documents prepared or maintained by governmental agencies. *Pension Benefits Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993).

Here, the City has attached a number of documents as exhibits in support of its Motion. It is clear, however, that several of these documents may not properly be considered in deciding the City's Motion. Specifically, Exhibits 1, 5, and 11 are all news articles reporting on, and purporting to provide relevant context to, the tragic events of July 14, 2019. These articles, however, are neither integral to the Complaint nor form the basis of Plaintiff's claims, and the facts contained therein on which the City relies are not generally known within this jurisdiction and cannot be accurately and readily determined from these articles. *See Fabricant v. Intamin Amusement Rides Int'l Corp.*, Civ. No. 19-12900, 2020 WL 373348, at *3 (D.N.J. Jan. 23, 2020). As for the remaining exhibits, which consist of publicly available records relating to Formisano's career as a member of the NPD, the deed to the property at which the shooting took place, documents from Formisano's pending criminal case, documents concerning the investigation of the NPD by the United States Department of Justice, and certain General Orders of the NPD relating to the evaluation and monitoring of NPD personnel, Plaintiff has not challenged the authenticity, availability, or accuracy of these records, and the Court finds that it may properly take judicial notice of them.

### A. Municipal Liability Under 42 U.S.C. § 1983

Plaintiff alleges that the City is liable for the deprivation of his constitutional rights by Formisano's use of excessive force pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must sufficiently allege (1) the violation of a federal right; (2) by a person acting under color of state law. *Walker v. City of Newark*, Civ. No. 19-16853 (KM) (ESK), 2020 WL 3542502, at *6 (D.N.J. July 1, 2020). A municipality such as the City may be liable under § 1983 in two distinct ways. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). First, a plaintiff may allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id*. Alternatively, a plaintiff may allege that their injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)). With respect to the former avenue of establishing municipal liability under § 1983, a plaintiff must identify either an "official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject" or, if alleging a custom, a "given course of conduct so well-settled and permanent as to virtually constitute law.'" *Id.* As to the latter avenue, in order to demonstrate the deliberate indifference necessary to sufficiently allege a failure or inadequacy theory of municipal liability, a plaintiff must show that: "(1) municipal policymakers know the employees will confront a particular situation; (2) the situation involves a difficult choice of a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause

deprivation of constitutional rights." *Id.* (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

Although Plaintiff appears to base his claims against the City under both theories of municipal liability, the Court finds that he has not sufficiently satisfied the threshold showing that Formisano was acting under color of state law at the time of the alleged shooting. "Acting under 'color of law means acting under one's capacity as a police officer.'" *Walker v. Jacques*, Civ. No. 04-351 (RMB), 2007 WL 2122028, at *5 (D.N.J. July 23, 2007) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). Off-duty police officers may nonetheless be found to have acted under color of state law if they purported to exercise official state authority in violating a plaintiff's federal rights. *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994). However, "a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." *Id.* In determining whether a police officer was acting under color of state law at the time at the time of the alleged violation of a plaintiff's rights under federal law, courts consider whether a plaintiff has alleged that the officer in question manifested sufficient indicia of state authority such as by "flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by police department regulations." *Id.*

Here, Plaintiff argues he has sufficiently alleged that Formisano acted under color of state law by alleging that he arrived at the home in his police uniform, shone his service-issued flashlight into the home, and used his service weapon to commit the tragic shooting. *See* Opp'n at 16-17. These allegations, however, are insufficient, without more, to state a plausible claim for relief. First, there is no dispute that at the time of the shooting Formisano was both off-duty and outside the jurisdiction of the NPD, and that the shooting occurred at a home that Formisano himself owned. As such, the Court cannot conclude that the fact that Formisano wore his police uniform to his own house is in any way suggestive of an exercise of official authority or is otherwise enough to clothe his actions with the authority of state law. *See Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 720 (D.N.J. 2010) Second, the use of service equipment, including a service weapon, in the commission of an alleged crime is insufficient standing alone to establish that a police officer was acting under color of state law. *Barna*, 42 F.3d at 817; *Galliano v. Borough of Seaside Heights*, Civ. No. 03-1463 (FLW), 2007 WL 979850, at *9 n.10 (D.N.J. Mar. 30, 2007) ("[T]his Court finds that where the conduct was strictly personal in nature and the only evidence of purported state authority is the use of a police-issued weapon, there is simply insufficient evidence to find state action.").

Most importantly, Plaintiff has failed to allege any facts that would establish a sufficiently close nexus between Formisano's alleged conduct and any actual or purported law enforcement responsibility or objective. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1151 (3d Cir. 1995) ("[I]f a person's actions were not committed in the performance of any actual or pretended duty, the actions were not committed under color of law." (quotations omitted)); *see also Hansell v. City of Atlantic City*, 152 F. Supp. 2d 589, 600 (D.N.J. 2001), *aff'd* 46 F. App'x 665 (3d Cir. 2002) (finding that off-duty officer was not

4

a state actor when using police-issued equipment to enter ex-wife's home and hold his children and others hostage). There are no allegations that he identified himself as a police officer, was responding to a call for police assistance or was attempting to intervene in a dispute as a police officer, sought or threatened to arrest anybody, or otherwise attempted to assert legal authority over someone. *See Soto v. City of Paterson*, Civ. No. 18-11311-SDW-SCM, 2019 WL 4686809, at *4 (D.N.J. Sept. 26, 2019). Nor are there any allegations that Formisano abused his authority and used his status as a police officer to further an underlying personal or unlawful objective, or that either Plaintiff or Ms. Solaro believed Formisano to be acting in his capacity as a police officer. *See Carson v. Vernon Twp.*, Civ. No. 09-6126 (DRD), 2010 WL 2985849, at *18-19 (D.N.J. July 21, 2010); *see also, e.g.*, *Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996) (finding sheriff acted under color of law in rape of assault suspect upon returning to her home after initial investigation); *United States v. Tarpley*, 945 F.2d 806 (5th Cir. 1991) (finding deputy sheriff acted under color of law in assaulting wife's former lover by, among other things, claiming his official status gave him special authority). In other words, Plaintiff has not shown that Formisano was in any way conducting, believed himself to be conducting, or otherwise appeared to be conducting official police business when, while off-duty, he allegedly showed up to a house he owned in a different jurisdiction than the one in which he worked and used his service weapon to tragically murder Ms. Solaro and seriously injure Plaintiff before fleeing the scene. Accordingly, Plaintiff's claim for municipal liability against the City under § 1983 must be dismissed.

### B. Negligent Supervision

The City also moves to dismiss Plaintiff's claim against it for negligent supervision of Formisano, arguing that it is both immune from any such claims and that, regardless of its potential immunity, Plaintiff has failed to adequately plead a *prima facie* case of negligent supervision. Mot. at 16-17. The Court disagrees.

#### 1. Whether the City is Immune

The Court finds that the City is immune, at least in part, from Plaintiff's negligent supervision claim. The New Jersey Tort Claims Act (the NJTCA"), N.J.S.A. § 59-1-1, *et seq.*, "sets the conditions under which public entities and public employees can be held liable in tort" and encompasses, but limits, liability for negligent supervision. *See Walker v. City of Newark*, 2020 WL 3542502, at *13, 15-16. Though the NJTCA permits liability against public entities in certain circumstances, "[t]he New Jersey Supreme Court has emphasized that '[t]he guiding principle of the Tort Claims Act is that immunity from tort liability is the general rule and liability is the exception.'" *Estate of Soberal v. City of Jersey City*, Civ. No. 04-2788 (JAP), 2006 WL 2085397, at *15 (D.N.J. July 25, 2006) (quoting *Coyne v. State Dep't of Transp.*, 182 N.J. 481, 488 (2005)). Among the immunities from tort liability available to public entities, the NJTCA provides, in relevant part:

> Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical

or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others.

N.J.S.A. § 59:6-4.

Here, Plaintiff argues, in part, that "by failing to maintain a mental health screening procedure, [the City] negligently retained Formisano as an NPD officer." Opp'n at 15. This argument falls squarely within the immunity provided by the NJTCA. As such, to the extent Plaintiff's negligent supervision claim against the City is based off an alleged failure to provide NPD officers, including Formisano, with regular mental health screenings and examinations, the City is immune, and Plaintiff's claim must be dismissed. To the extent Plaintiff bases his negligent supervision claim on Formisano's conduct and record as member of the NPD, however, the Court will analyze the merits of Plaintiff's claim.

### 2. Whether Plaintiff has Adequately Stated a Claim for Negligent Supervision

Plaintiff argues that several incidents prior to Formisano's alleged actions giving rise to this case should have alerted the City to his dangerousness and unfitness to serve as a police officer. In particular, Plaintiff points to a suspension Formisano received shortly after joining the NPD, two more recent reports indicating Formisano's use of force while on-duty, and alleged statements Formisano made to colleagues about his intentions to harm himself and others shortly before allegedly murdering Ms. Solaro and injuring Plaintiff. Opp'n 15; Compl. at ¶¶ 54-56. These allegations are sufficient to state a negligent supervision claim.

At the outset, Plaintiff is correct that liability for negligent supervision may properly be based on actions taken by an employee outside the scope of their employment. "Unlike *respondeat superior*, negligent hiring, supervision, and training are not forms of vicarious liability and are based on the direct fault of an employer." *G.A.-H v. K.G.G.*, 238 N.J. 401, 415-16 (2019). Thus, "negligent supervision is separate from the theory of *respondeat superior* because it covers acts committed outside the scope of employment. Employers have a duty to supervise employees, and liability may be imposed if an employer fails to perform that duty." *Sullivan v. Marina Dist. Dev. Co., LLC*, No. CIV. 10-4204 RBK/JS, 2012 WL 993417, at *3 (D.N.J. Mar. 23, 2012). Accordingly, the City is not free from liability simply because Formisano may have been off-duty at the time of his alleged actions if it breached its independent duty to supervise him.

At this stage of the litigation, accepting the well-pleaded allegations as true, the Court concludes that Plaintiff has sufficiently stated a negligent supervision claim against the City. To state a claim for negligent supervision, a plaintiff must show "(1) that the employer knew or had reason to know of the 'particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons,' and (2) that through the employer's negligence, the employee's 'incompetence, unfitness, or dangerous characteristics

proximately caused the injury." *Israel v. Smith*, Civ. No. 13-cv-0097 (PGS) (LHG), 2017 WL 5709559, at *8 (D.N.J. Nov. 27, 2017) (quoting *Maddox v. City of Newark*, 50 F. Supp. 3d 606, 636 (D.N.J. 2014)). Here, Plaintiff has alleged that Formisano made repeated statements indicating an intent to harm himself or others in the presence of colleagues, and that the NPD itself was aware of such statements. Compl. at ¶¶ 54-57. Furthermore, Plaintiff has alleged that, despite being aware of Formisano's remarks and "deteriorating mental state," the NPD retained Formisano with no disciplinary action or restrictions, allowed Formisano to retain his service weapon, and, as a result, proximately caused Plaintiff's injuries when Formisano used his service weapon to allegedly murder Ms. Solaro and seriously injure Plaintiff. *Id.* These allegations are sufficient to state a negligent supervision claim at this stage.

### C. Punitive Damages

Plaintiff seeks punitive damages from the City, at least with respect to his negligent supervision claim. Punitive damages, however, are unavailable against municipalities under either § 1983 or the NJTCA. *See Caban v. City of Newark*, Civ. No. 17-8230, 2018 WL 2427124, at *3 (D.N.J. May 30, 2018). Accordingly, to the extent Plaintiff seeks punitive damages against the City, Plaintiff's claims are dismissed.

### D. Stay Pending Resolution of Formisano's Criminal Proceedings

Because the Court has determined that Plaintiff has stated a claim for negligent supervision against the City, it must finally consider the City's request for a stay of these proceedings pending resolution of Formisano's ongoing criminal proceedings in New Jersey state court. In determining whether to stay a civil case where there are related pending criminal proceedings, the Court considers a number of factors, including:

> (1) the extent to which the issues in the criminal and civil case overlap; (2) the status of the case, including whether the defendants have been indicted; (3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; (4) the private interests of and burden on defendants; (5) the interests of the court; and (6) the public interest.

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526-27 (D.N.J. 1998). Consideration of these factors convinces the Court that a stay is warranted. Findings and determinations made in the underlying criminal proceedings against Formisano will likely have important ramifications on the litigation of this case. Formisano has already been indicted, and a motion to dismiss that indictment has been denied. Plaintiff will not suffer any prejudice as a result of the delay, and does not argue otherwise, because his rights are preserved under the applicable statute of limitations. Finally, both the interests of the Court and of the public will be furthered by a complete, unimpeded criminal investigation and proceedings before turning to resolution of outstanding issues of civil liability. *See generally Colombo v. Board of Educ. For the Clifton School Dist.*, Civ. No. 11-00785, 2011 WL 5416058 (D.N.J. Nov. 4, 2011).

Accordingly, the Court shall administratively terminate this case pending resolution of the ongoing state criminal proceedings. Plaintiff may move to reopen this case within sixty (60) days of the completion of the state criminal proceedings against Formisano.

## IV. CONCLUSION

For the reasons set forth above, the City's Motion is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.


*/s/ William J. Martini*
**Date: June 1, 2020**                   **WILLIAM J. MARTINI, U.S.D.J.**